Deaderick, Ch. J.,
delivered the opinion of the court;
Defendant in error sent several notes to R. A. Crawford, an attorney of Greeneville, on plaintiff in error, to- collect. He obtained judgment on said notes before a justice of the peace of Greene county.
*9 In 1862, some time in August, the attorney brought transcripts of the judgments to Knoxville, and demanded of the treasurer of the company, at his office, payment of the same. The treasurer paid the judgments and took receipts therefor.
Executions were subsequently issued upon those judgments, which were brought up into the circuit court for the purpose of having them quashed, upon the ground that they had been paid.
There an issue was made upon, the fact of payment, and submitted, by consent, to the court without the intervention of a jury.
The circuit judge held that the judgments had not been paid, and rendered judgment accordingly, from which the company appealed.
The facts already stated are not contested, but it is insisted that as the evidence shows that the payment was made in Confederate notes, and to the attorney of the plaintiffs below, that it did not bind them; that the attorney was not authorized to receive Confederate notes, or anything but money, in payment of said judgment.
Do express authority on the one hand, nor prohibition on the other, to receive Con federate money, is shown.
Where administrators had recovered a judgment, and Dillard, as agent or purchaser of a distributive share, procured an assignment on the justice’s docket to Traywick, and he received Confederate money, it was held a good payment. 2 Heis., 646. But it is said in that case, if Traywick had been merely the agent of Dillard, without express authority to exercise his discretion as to the kind of money to be received, a payment in Confederate money by defendants on the judgment would not have released him.
So in King v. Fleece, it was held that without special authority, an agent had no right to receive Confederate *10 money. 7 Heis., 273. See also to the same effect, Scruggs v. Luster, 1 Heis., 150.
On the other hand, we have held that a sheriff or clerk might lawfully receive Confederate money on a,n execution, or a judgment, respectively, when it was the circulating medium of the country. 4 Heis., 89; 7 Heis., 437. In the case of Neely v. Woodward, 7 Heis., 495, the distinction is recognized and stated between the powers of collecting officers and private agents in the receipt of Confederate notes. Such notes fall within the definition of money given in the case of Crutchfield v. Robbins, 5 Hum., 15, which is said “to cover everything which, by consent, is made to represent property, and passes from hand to hand.” See also 9 Heis., 691. So it is, in effect, held that Confederate notes are money, in the cases in which it has been held that a sheriff may receive them in satisfaction of an execution, or a clerk in extinguishment of a judgment for money. See also the case of Burford, admr., v. Memphis Bulletin Co., 9 Heis., 691.
.Neither officer, any more than an attorney, without, the express consent of the plaintiff, could take anything but money in satisfaction of a judgment or execution.
But it is insisted that Crawford, to whom the payment of the judgments ivas made, as attorney for plaintiffs in the payment, was but their agent, and as such, had no- right to receive Confederate money. He is something more than a mere private agent with such powers only as his principal may delegate.
There are certain powers, as an officer of the court, which the law confers upon him, independently of express delegation from the party who employs him. In the conduct of a cause, in virtue of his employment as an attorney, he may bind his client by agreements, admissions, and contracts. But he may not act in bad faith, or knowingly to the injury of his client. If he has a claim to- collect, unless expressly instructed otherwise, he may receive in *11 payment bank notes, althpugh. siich notes are under par ; and, unless such notes were uncurrent and so greatly depreciated as to show bad faith, his act would be binding upon his client.
In the case of Kelley v. Story, 6 Heis., 202, Story obtained a judgment against Kelley, in July, 1861, and his attorney, who had obtained the judgment, wrote Story’s attorney, February 1st, 1862, that Kelley had better pay the judgment while Story was willing to take “currency,” “as he talks like he wont take paper much longer.”
Kelley paid to the clerk the amount of the judgment, March 3, 1862, partly in Confederate notes, and it was held that the payment was good.
The court says: “It is insisted the payment to Byron, the clerk, was void, because made in Confederate money, and that it was not authorized by the letter of Ooldwell, the attorney of Story. Coldwell’s authority to write the letter, however, is not contested.”
The court then says that “the letter was authority to pay in currency or paper, and as Confederate notes were current and equal in value to other paper then current, the payment was valid.”
The reasoning of the court seems to imply that the authority to pay was derived from Story, as the judge delivering the opinion says that Coldwell’s authority to write the letter was not contested.
But it does not appear, otherwise than from the letter itself, that Story gave his counsel any special authority to take “currency” or “paper,” which this court construed to include Confederate money. So that, at last, the validity of the payment in Confederate money must have rested upon the authority of attorney to receive them, or to direct that they should bo received.
If, therefore, the letter of attorney was sufficient authority to authorize the receipt of Confederate money, so must be held the demand of the attorney in this case, who had *12 received tlio notes for collection, obtained the judgments upon them, and who appeared with certified transcripts of the judgments in the office of the treasurer of the company, and there demanded and received payment of them, and executed his receipts therefor — nothing appearing to impugn the good faith of the parties.
We are of opinion, therefore, that the judgment of the circuit court was erroneous, and must he reversed,, and that judgment should be entered here quashing the several executions, upon the ground that they have been paid.